UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
      :
CHERYL CRAVEN,      :
      :
                      Plaintiff,      :
      :           19-CV-1486 (JMF)
          -v-      :
      :           OPINION AND ORDER
THE CITY OF NEW YORK, et al.,      :
      :
                      Defendants.      :
      :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Cheryl Craven brings employment discrimination claims against her former employer, the City of New York ("City"), and her former supervisors, Amy Weiswasser and Laura Parker. In particular, Craven asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 *et seq.*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), brought pursuant to 42 U.S.C. § 1983 ("Section 1983"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. §§ 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*; and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims. For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

        The following facts — drawn from the First Amended Complaint ("Complaint"), ECF No. 25 ("Compl.") and documents that are incorporated by reference in, or integral to, the Complaint — are assumed to be true for purposes of this motion. *See DiFolco v. MSNBC Cable*

*L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).[1]

Craven worked for the New York City Human Resources Administration ("HRA") from September 1995 to March 31, 2017.  Compl. ¶ 13.  She began as a Per Diem Fraud Investigator I for the HRA's Investigation Revenue and Enforcement Agency ("IREA").  *Id.* ¶ 36.  Thereafter, she received several promotions, most recently in August 2015 to the position of Administrative Investigator, level M-1, and Managing Director of the Criminal Remedies Division ("CRD") of the Prosecution & Administrative Hearings Division ("PAHD").  *Id.* ¶¶ 33, 38, 41.  She remained in that role until her employment ended in March 2017.  *See id.* ¶ 44.

Craven was supervised at CRD by Weiswasser, the Director of PAHD.  *Id.* ¶ 45.  Weismasser, in turn, was supervised by Parker, a Deputy Assistant Commissioner for the IREA.  *Id.* ¶ 24.  Craven and Parker are both African American; Weiswasser is white.  *Id.* ¶¶ 12, 19, 25.  According the Complaint, Weiswasser engaged in "openly discriminatory behavior towards black employees and other minorities," including Craven, which Parker "condoned" and "failed to address."  *Id.* ¶¶ 47, 108, 124.  The Complaint alleges several forms of such behavior.

First, throughout Craven's employment, Weiswasser made discriminatory comments about minority and female employees.  *Id.* ¶ 47.  For instance, Weiswasser repeatedly described minority employees as "surprisingly 'articulate.'"  *Id.* ¶¶ 48, 70.  In August 2016, Weiswasser commented that a "dark-skinned subordinate of Plaintiff was surprisingly 'articulate and well-spoken.'"  *Id.* ¶ 69.  Weiswasser also commented to Craven that Weiswasser had been "reluctant" to hire a particular Administrative Investigator because "she was a woman" and that Weiswasser "would have preferred to hire a man."  *Id.* ¶¶ 72, 74.

---

[1]  In particular, the Court relies on the charge Craven filed with the Equal Employment Opportunity Commission ("EEOC"), which was submitted by Defendants in support of their motion.  *See Mauro v. N.Y.C. Transit Auth.*, No. 09-CV-4732 (DLC), 2010 WL 1424009, at *1 n.1 (S.D.N.Y. Apr. 9, 2010) (relying on the plaintiff's EEOC charge in identical circumstances).

Weiswasser also "stereotyped and branded [Craven] an 'angry black woman.'" *Id.* ¶¶ 53, 60, 147.  For instance, in January 2016, Weiswasser sent Craven a memorandum stating that Craven did not display "optimism and positivity," and directing Craven to set the "proper tone" for her staff.  *Id.* ¶ 61.  On February 23, 2016, Weiswasser characterized Craven as "angry," and directed her to attend training on "positive counseling for problematic employees" or "productive confrontation."  *Id.* ¶ 63.  A few months later, Weiswasser again criticized Craven's tone as "angry" and said "there may be instances where you need to soften your tone, particularly in interpersonal settings. . . .  You have to be sensitive to your audience, the situation, and perception."  *Id.* ¶ 68.

In addition, Weiswasser subjected Craven to "excessive criticism, incessant harassment and other untoward conduct."  *Id.* ¶ 58.  For instance, in the fall of 2014, during a discussion about an African-American woman previously supervised by Craven, Weiswasser — who was not yet Craven's supervisor — said that Craven was "very black-white militant."  *Id.* ¶¶ 49-50, 54.  When pressed, Weiswasser claimed she meant that Craven saw things "very black and white."  *Id.* ¶ 51.  A few months after Craven's promotion in August 2015, when Weiswasser was her supervisor, Weiswasser instructed her not to eat lunch with a black male employee and to "distance herself" from him because "it doesn't look good."  *Id.* ¶ 54.  In December 2015, Craven was hospitalized because of "severe emotional distress" caused by Weiswasser's "discriminatory actions," "work stress," "and other medical conditions."  *Id.* ¶ 59.  Craven returned to work in January 2016.  *Id.* ¶¶ 60.

Weiswasser also increased Craven's workload without increasing her pay.  On March 28, 2016, Weiswasser added "goals" for Craven to complete during the one-year probation period that followed her August 2015 promotion.  *Id.* ¶¶ 46, 64.  In addition, on August 29, 2016, Weiswasser added "the managerial responsibilities and supervision of the External Affairs

3

Division" to Craven's duties. *Id.* ¶ 81. Despite repeated requests for corresponding pay increases, Weiswasser and Parker declined to raise Craven's salary. *Id.* ¶¶ 121-22.

In September 2016, Craven was interviewed in connection with an internal investigation of discrimination claims against Weiswasser by another of Weiswasser's subordinates. *Id.* ¶¶ 72, 76, 83. After the interview, Weiswasser told Craven, "You know I treated [the employee] fairly." *Id.* ¶ 84. Later that month, Weiswasser added most of the former subordinate's responsibilities to Craven's workload. *Id.* ¶¶ 85, 92. Craven still did not receive additional salary or benefits, despite requesting them. *Id.* ¶¶ 86, 98. Craven also requested additional staff to help with her responsibilities, but Weiswasser instead hired staff for other managers "who were either white or never opposed Weiswasser's discriminatory behavior." *Id.* ¶¶ 99-100, 102. On December 25, 2016, Weiswasser named Craven the permanent Director of PAHD/External Affairs, adding even more to her responsibilities without any increase in salary. *Id.* ¶¶ 93-94.

The Complaint describes several other incidents following Craven's interview in September 2016. For instance, on September 28, 2016, Weiswasser "wrote in an assessment of [Craven's] performance" that she "came across as defensive" during a conference call on August 25, 2016. *Id.* ¶¶ 87-88. During a February 2017 meeting, Weiswasser explained an agency policy by using Craven as an example of a felon affected by the policy. *Id.* ¶ 105. And on February 9, 2017, Weiswasser accused Craven of being dishonest by secretly recording a meeting. *See id.* ¶ 107; *see also id.* ¶¶ 65-67, 78-79, 103 (describing other incidents both before and after Craven's interview).

In January 2017, Phillip Schaffroth, Jr., a white man, transferred to PAHD and was placed in charge of the Economic Crimes Unit ("ECU"). *Id.* ¶ 112. According to the Complaint, Schaffroth was paid over ten thousand dollars more per year in base salary than Craven as of January 2017. *Id.* ¶ 118. As directors of their respective units, however, Schaffroth and Craven

4

had similar responsibilities: They "supervised investigators and oversaw investigations of Medicaid and social services fraud," *id.* ¶ 116; and they "attended the same routine meetings," *id.* ¶ 117.  And when Schaffroth took his job as director of ECU, Craven had been working at HRA for about two years longer than Schaffroth and had been a supervisor for nearly five years longer.  *Id.* ¶ 119.  Schaffroth also managed fewer employees and fewer units than Craven.  *Id.* ¶ 115.

In January 2017, "Plaintiff pointed out to Weiswasser that her managerial duties were more demanding than other . . . Directors like Debra Duguid, Twanda Hunter, Cathy Rush Brown, and George Davis."  *Id.* ¶ 120.  Weiswasser acknowledged that Craven's work was more demanding and agreed that Weiswasser would not have taken the position for so little money.  *Id.* ¶ 120.  Two months later, on March 31, 2017, Craven left her job because her health had deteriorated "to the point that she could no longer tolerate the discriminatory environment created by Weiswasser and condoned by Parker."  *Id.* ¶ 124.  On December 21, 2017, Craven filed charges of discrimination with the EEOC, alleging discrimination from August 2015 through March 31, 2017.  *See id.* ¶ 9; *see also* ECF No. 30-1, at 1.  On November 14, 2018, the EEOC issued Craven a Right to Sue Notice.  Compl. ¶ 10.  On February 15, 2019, Craven commenced this lawsuit.  *See* ECF No. 1.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Craven's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

As noted, Craven brings claims under a variety of statutes and theories. The Court will begin with her claims of race and sex discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL; then turn to her race discrimination and retaliation claims under Section 1981, brought pursuant to Section 1983; and then finish with her claims under the Equal Pay Act.

**A. Claims Under Title VII, the NYSHRL, and the NYCHRL**

Craven brings two types of claims under Title VII, the NYSHRL, and the NYCHRL: claims for race and sex discrimination and claims for retaliation.[2] The Court will address each in

---

[2]   In her opposition brief, Craven makes reference to "a hostile work environment," *see* ECF No. 34 ("Pl.'s Opp'n"), at 1, 4 n.1, but she does not substantively argue that the Complaint states a discrete claim of hostile work environment discrimination. Nor does the Complaint explicitly reference such a claim. *See* Compl. ¶¶ 133-176. Thus, the Court does not construe the

turn.

1. **Race and Sex Discrimination Claims**

The Court begins with Craven's race and sex discrimination claims under Title VII, the NYSHRL, and the NYCHRL. These claims are subject to the well-known three-step burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *4 (S.D.N.Y. Sept. 27, 2013).[3] At the motion-to-dismiss stage, however, only the first step — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue. *See Littlejohn*, 795 F.3d at 311; *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case under all provisions except the NYCHRL, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question, or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination. *See, e.g.*, *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014). The showing required for NYCHRL claims differs slightly, as the adverse action need not be "material"; instead, a plaintiff need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173

---

Complaint to include a hostile work environment claim. To the extent the Complaint does include such a claim, it is deemed abandoned. *See, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order).

[3]   Strictly speaking, it is "unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Nevertheless, courts in this Circuit "typically . . . apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework." *Jeune*, 2014 WL 83851, at *4 (alterations and internal quotation marks omitted).

(S.D.N.Y. 2011)).  An NYCHRL plaintiff, however, must still adduce evidence supporting an inference of discrimination.  *Williams*, 836 F. Supp. 2d at 177.  Indeed, to survive a motion to dismiss under all of the provisions at issue in this case, the facts alleged must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

Applying these standards here, the Court concludes that Craven's allegations are largely sufficient.  There is no dispute that she satisfies the first two prongs of the *prima facie* test.  As for the third, she plausibly alleges two adverse employment actions: that she was "paid less than a white male" — namely, Schaffroth — and that she was given "an excessive workload." Pl.'s Opp'n 4; *see, e.g.*, *Butterfield-Bajinan v. City of New York*, No. 16-CV-5919 (RJS), 2017 WL 4045175, at *4 (S.D.N.Y. Sept. 11, 2017) (finding allegations of unequal pay sufficient to constitute an adverse action); *Vega*, 801 F.3d at 88 ("[T]he assignment of an excessive workload as a result of discriminatory intent can be adverse employment action." (internal quotation marks and citations omitted)).  Contrary to Defendants' contentions, Craven's allegations that she and Schaffroth were "similarly situated" are sufficient to survive a motion to dismiss.  *See* Compl. ¶¶ 112-19; *see also, e.g.*, *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (finding substantial similarity where employees were allegedly in the same management group, reported to the same supervisor, and were subject to the same performance evaluation and disciplinary standards).  And, as in *Vega*, Craven plausibly alleges an increased and excessive workload that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 88 (internal quotation marks omitted); *see* Compl. ¶¶ 92-94; *cf. Forest v. N.Y. State Office of Mental Health*, 672 F. App'x 42, 45 & n.3 (2d Cir. 2016) (summary order) (holding that extra assignments "within an employee's job description" did not constitute adverse employment

8


action for purposes of stating a discrimination claim).[4]

So too, Craven satisfies her "minimal burden" of alleging facts "suggesting an inference of discriminatory motivation" for these actions. *Vega*, 801 F.3d at 85 (internal quotation marks omitted). Among other things, Craven alleges that a similarly situated white male colleague was paid more than she was, despite having fewer responsibilities and equal or lesser credentials, and that Weiswasser ignored Craven's requests for additional staff despite filling other, "less important" vacancies. *See* Compl. ¶¶ 99-100, 118-20. Additionally, the allegations of Weiswasser's discriminatory comments and conduct, "even if they do not independently constitute adverse employment actions, provide relevant background evidence by shedding light on Defendant[s'] motivation." *Vega*, 801 F.3d at 88 (internal quotation marks omitted). Taken together, these allegations create a "mosaic" of information supporting an inference of discrimination. *Id.* at 86-87 (internal quotation marks omitted). In the face of these allegations, and the reasonable inferences that can be drawn from them, Defendants' arguments to the contrary — that Craven was technically "promoted" during her employment, that any pay differential between Craven and Schaffroth was based on the latter's superior credentials, and that Parker and Weiswasser were members of one or both of the protected classes to which Craven herself belongs, *see* ECF No. 29 ("Defs.' Mem."), at 15-16 — are insufficient to warrant dismissal at this stage.

That said, Craven's discrimination claims do fall short to the extent they are based on a claim of constructive discharge. Constructive discharge "occurs when an employer, rather than

---

[4] Both of these adverse actions allegedly continued until the end of Craven's employment, which occurred within the 300 days preceding the filing of her charge with the EEOC. Accordingly, Defendants contention that Craven's Title VII claims are time barred because she did not file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment action, *see* Defs.' Mem. 9-10, is without merit.

directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011). Thus, to state a claim, a plaintiff must allege not just that "[w]orking conditions are . . . so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign," *id.*, but also that the defendant "*intentionally* or *deliberately* created negative working conditions . . . so as to compel [the plaintiff] to resign," *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *10 (S.D.N.Y. Sept. 18, 2019) (emphasis in original). Here, Craven alleges only that "Defendants took all of the foregoing actions in order to deprive Plaintiff of employment opportunities and other contractual opportunities." Compl. ¶ 126. That does not suffice because, even if true, it does not suggest that Defendants intended to compel Plaintiff to resign. *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 12 (2d Cir. 2013) (summary order) ("A constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of [her] work, or did not receive a raise, or preferred not to continue working for that employer."). Thus, to the extent that Craven's discrimination claims are based on a theory of constructive discharge, Defendants' motion to dismiss is GRANTED; otherwise, the motion is DENIED.

    2. **Retaliation Claims**

Next, the Court turns to Craven's retaliation claims under Title VII, the NYSHRL, and the NYCHRL. To adequately allege retaliation, a plaintiff must "give plausible support to the reduced prima facie requirements" of "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Febrianti v. Starwood Worldwide*, No. 15-CV-635 (JMF), 2016 WL 502027, at *3 (S.D.N.Y. Feb. 8, 2016). More specifically, Craven must allege that "retaliation was a 'but-for' cause of the employer's

adverse action[s]." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (internal quotation marks omitted). Measured against these standards, Craven's allegations that she received unequal pay and an excessive workload in retaliation for her participation in an interview with HRA's equal employment office are sufficient to state a claim. To be sure, the adverse employment actions that were properly exhausted occurred about five months after Craven's September 2016 interview.[5] But Craven alleges that the "adverse actions . . . occurred against a backdrop of continuing antagonism" during the intervening period. *Duplan*, 888 F.3d at 625; *see* Compl. ¶¶ 84-108; *see also, e.g.*, *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (noting that, in certain circumstances, "five months is not too long to find the causal relationship" (internal quotation marks omitted)); *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) ("[A]n inference of discriminatory intent may be established by, *inter alia*, the employer's invidious comments about others in the employee's protected group." (internal quotation marks and alterations omitted)). That is sufficient to survive Defendants' motion.

## B. Section 1981 Claims

Next, the Court turns to Craven's claims under Section 1981. Craven's Section 1981 retaliation claims based on unequal pay and excessive workload survive for the reasons discussed above. *See, e.g.*, *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 226 (E.D.N.Y. 2018)

---

[5] Defendants argue that the decisions to add to Craven's workload and deny her pay increases were made before her interview. *See* ECF No. 35, at 7. But the Complaint includes allegations that Weiswasser added to Craven's responsibilities and denied additional requests for a salary increase after the interview. Compl. ¶¶ 85-86, 92, 98. Moreover, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir. 2001), upon which Defendants rely in making this argument, is inapposite because it concerned protected activity that occurred during "an extensive period of progressive discipline," and held that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." 248 F.3d at 95 (internal quotation marks omitted). Here, there are no allegations that Craven was progressively disciplined prior to her interview.

("[R]etaliation claims alleged under § 1981 are subject to the same analysis as those alleged under Title VII."). As for her Section 1981 race discrimination claims, the Supreme Court recently clarified that, to bring such a claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (rejecting "the motivating factor test"). Craven's unequal pay allegations are sufficient to pass that threshold, as she alleges that she was equal to or more experienced than Schaffroth and that he is white while she is black. By contrast, the allegations underlying Craven's excessive workload claim do not support an inference of but-for causation. The allegations fail, for example, to identify those to whom Weiswasser might have assigned the work, but for Craven's race. *See, e.g.*, Compl. ¶ 120 (alleging that Craven's "duties were more demanding than other BFI Directors like Debra Duguid, Twanda Hunter, Cathy Rush Brown, and George Davis," but failing to allege that Weiswasser chose not to assign work to them because of their or Craven's race). Accordingly, Craven's Section 1981 race discrimination claim based on excessive workload must be and is dismissed.

Finally, Craven's Section 1981 claims must also be dismissed to the extent that they are brought against Parker.[6] To bring claims against a state or local employee in her individual capacity under Section 1983, a plaintiff must adequately allege that the employee was "personally involved in the alleged deprivation." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 287 (S.D.N.Y. 2019). Personal involvement can include "being informed of the violation through a report" and "fail[ing] to remedy the wrong," as long as "the supervisor's actions were

---

[6] Craven clarifies in her opposition brief that she is not suing the City under Section 1983. *See* Pl.'s Opp'n 23. Accordingly, the Court need not and does not address whether the Complaint plausibly alleges a basis for liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

the proximate cause of the [violation]." *Williams v. N.Y. State Unified Court Sys. Off. of Court Admin.*, No. 16-CV-2061 (VSB), 2017 WL 4402562, at *8-9 (S.D.N.Y. Sept. 30, 2017).  Here, the Complaint adequately alleges Weiswasser's personal involvement, as she was the one who carried out almost all of the relevant conduct.  By contrast, however, the Complaint falls short as to Parker.  The Complaint alleges only that Parker "ignored Plaintiff's requests" for pay raises and staff increases, Compl. ¶¶ 99, 121, and that Craven "reported" Weiswasser's accusation that Craven had secretly recorded a meeting and Weiswasser's "continuing acts of discrimination" to Parker, *id.* ¶ 108.  Nowhere does the Complaint allege that Parker was ever informed of the violations at issue here — namely, that Craven was being paid less than a white male colleague for substantially equal work and that Craven was being retaliated against for participating in the interview with the HRA's equal employment office.  Notably, Craven offers no argument to the contrary in her opposition brief.  *See* Pl.'s Opp'n 22-23.  Accordingly, Craven's Section 1981 claims against Parker in her individual capacity must be and are also dismissed.[7]

## C.  Claims Under the Equal Pay Act

Craven's last set of claims are brought under the Equal Pay Act, which "prohibits

---

[7]     Defendants argue in passing that Weiswasser is entitled to qualified immunity, *see* Defs.' Mem. 23-24, but there is no merit to the argument at this stage of the proceedings.  Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Warburton v. John Jay Coll. of Crim. Justice of the City Univ. of N.Y.*, No. 14-CV-9170 (JPO), 2016 WL 3748485, at *2 (S.D.N.Y. July 7, 2016) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  It has "long been clearly established that individuals have the right to be free from intentional race and gender discrimination," *Anderson v. N.Y.C., Health & Hosps. Corp.*, No. 16-CV-1051 (GBD) (KHP), 2017 WL 9538862, at *15 (S.D.N.Y. Jan. 19, 2017), and "to be free from intentional race discrimination and retaliation," *DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 196 (S.D.N.Y. 2012).  Defendants argue that "[n]o reasonable official could possibly have concluded that promoting an employee and then requiring more and a higher level of work, together with mild reprimand and suggestions would somehow violate an employee's Constitutional rights." Defs.' Mem. 24.  But that is not a fair characterization of the allegations in the Complaint, which, at this stage, must be taken as true and viewed in the light most favorable to Craven.

employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Kairam v. West Side GI, LLC*, 793 F. App'x 23, 25 (2d Cir. 2019) (summary order) (internal quotation marks omitted). "Thus, to prove a violation of the EPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (internal quotation marks and alterations omitted). Measured against these standards, Craven's allegations that she was paid less than Schaffroth, a male employee, was paid and that her responsibilities were similar, if not greater, than his are sufficient to state an Equal Pay Act claim. *See, e.g.*, *Isbell v. City of New York*, 316 F. Supp. 3d 571, 589 (S.D.N.Y. 2018) (holding that identification of a single comparator suffices at the pleading stage).

But Craven's claim of retaliation in violation of the Equal Pay Act falls short. To premise a retaliation claim on an oral complaint to her employer, a plaintiff must allege that her complaint was "made with a 'degree of formality' and that its content and context provide 'fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of [the employer's] business concerns.'" *Lenzi v. Systemax, Inc.*, No. 14-CV-7509 (SJF), 2015 WL 6507842, at *5 (E.D.N.Y. Oct. 26, 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). Here, the Complaint fails to plausibly allege that Craven sufficiently notified Defendants that she was complaining of conduct that violated the Equal Pay Act before any of Defendants' alleged acts of retaliation. Craven repeatedly alleges that she made "requests for a merit increase" to both Weiswasser and Parker,

Compl. ¶¶ 109-11, and "pointed out to Weiswasser that [Craven's] managerial duties were more demanding than other BFI Directors" in January 2017. *Id.* ¶ 120. But the "BFI Directors" that Craven referenced included both men and women, and Craven notably did *not* mention Schaffroth, the only comparator identified in the Complaint. Compl. ¶ 120. Accordingly, "there is no indication that [she was] actually complaining of conduct that plausibly rises to an Equal Pay Act violation." *Kent-Friedman v. N.Y. State Ins. Fund*, No. 18-CV-4422 (VM), 2018 WL 6547053, at *2 (S.D.N.Y. Nov. 16, 2018) (internal quotation marks omitted). Thus, Craven's retaliation claim under the Equal Pay Act must be and is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. In particular, the motion is granted as to Craven's claims for discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL based on constructive discharge; discrimination under Section 1981 based on excessive workload and constructive discharge; discrimination and retaliation under Section 1981 against Parker; and retaliation under the EPA. The motion is denied as to Craven's claims for discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL based on unequal pay and excessive workload; discrimination under Section 1981 based on unequal pay against Weiswasser; retaliation under Section 1981 based on unequal pay and excessive workload against Weiswasser; and unequal pay under the EPA.

As to the dismissed claims, the Court declines to grant Craven leave to amend *sua sponte*. Craven has neither sought leave to amend nor suggested that she possesses any additional facts that could cure the defects in her dismissed claims. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to

15

certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Craven was on notice of Defendants' arguments when she filed the Complaint in response to Defendants' original motion to dismiss, and Craven was expressly warned that she would "not be given any further opportunity" to amend the Complaint. *See* ECF Nos. 21, 24, 25. In light of these circumstances, the Court will not *sua sponte* grant leave to amend. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).

Unless and until the Court orders otherwise, Defendants shall file their answer to the remaining claims **within three weeks of the date of this Opinion and Order**. In addition, the initial pretrial conference is reinstated and ADJOURNED to **July 1, 2020**, at **3:15 p.m.** The conference will be governed by the Court's Order of February 25, 2019, and the parties should prepare accordingly, including by submitting a joint status letter and proposed case management plan no later than the Thursday prior to that conference. *See* ECF No. 9, at 2-3.

The Clerk of Court is directed to terminate ECF No. 28.

SO ORDERED.

Dated: May 28, 2020
New York, New York

JESSE M. FURMAN
United States District Judge